UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In Re:

         Brian & Melissa Kelly

                                Case No.  09-48072
                                Chapter  13
            Debtor.                 Hon. Thomas J. Tucker

_____/



United States of America

                 Appellant,

        v.


Tammy L. Terry

                 Appellee,

_____/


**NOTICE OF TRANSMITTAL OF**
**MOTION FOR WITHDRAWAL OF REFERENCE**


      On March 30, 2012, a Motion for Withdrawal of Reference was filed.  I hereby certify that the attached documents consisting of the Bankruptcy Matter Civil Case Cover Sheet and Motion for Withdrawal of Reference are transmitted to the United States District Court for the Eastern District of Michigan, which constitutes the Record on Appeal.


_____      There is a previous civil matter in this bankruptcy case.  That matter was given civil case number _____ and assigned to District Judge _____.


___X___      This is a new matter and not previously assigned to a District Court Judge.


Dated:      April 4, 2012          Clerk, United States Bankruptcy Court


                            By:   /s/ Lashonda Moss_____ ___
                                Deputy Clerk

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:                              [*being filed separately in each case*]

CEDRIC & GINA BINNS,                Case No. 09-45674-tjt
NANCY KIBBE,                        Case No. 09-46597-tjt
KENNETH & GENEVIE FORBES,           Case No. 09-46930-mbm
STEVEN & LINDA JURGIEL,             Case No. 09-47131-wsd
KENNETH & CYNTHIA STAFFORD,         Case No. 09-47345-swr
JUNE LESTER,                        Case No. 09-47521-tjt
BRIAN KELLY,                        Case No. 09-48072-tjt
PHILLIP & RENEE ADORJAN,            Case No. 09-48196-mbm
KIMBERLY KLAUS,                     Case No. 09-48261-pjs
SHARILYN OBERDORF,                  Case No. 09-48601-pjs
DENNIS & SUSAN KAROL,               Case No. 09-48757-pjs

                                    *Related District Court case:*  **No. 2:09-cv-13505**


**Motion That District Court Withdraw the Reference over the Identical
Motions for Relief filed March 29, 2012, and Consolidate Those Contested Matters**

On March 29, 2012, the United States of America filed in each of the above cases a

*Motion for Relief From Provision in Confirmation Orders Enjoining IRS to Redirect Future Tax*

*Refunds to Trustees (Unless the Sixth Circuit Grants Rehearing in United States v. Carroll) and*

*to Stay Enforcement of all Such Orders During These Proceedings* ["Motion for Relief"].  The

Motions for Relief seek to vacate or dissolve injunctions against the IRS contained in the

confirmation order in each case, requiring the IRS to send directly to the Trustees any tax

refunds claimed by debtors on future tax returns during their plans.  The Motions also request a

stay of the enforcement of such provisions in all cases (not just those listed above) until the

Motions for Relief are decided and all appeals concluded.

Pursuant to 28 U.S.C. § 157(d), Fed.R.Bankr.P. 5011(a), and LDR 83.50(b), the United

States hereby moves in each of the above-captioned cases to withdraw the reference with respect

to the Motion for Relief (which was automatically referred to the Bankruptcy court under LDR

1

83.50(a)(1) and filed therein accordingly), and to consolidate the proceedings.  Under 28 U.S.C.

§ 157(d), a district court may withdraw "in whole or part, any case or proceeding referred under

this section."  The Motions for Relief are separate "contested matters" under Fed.R.Bankr.P.

9014, and this motion is directed only at those contested matters and not at the underlying

Chapter 13 cases in there entirety.  The United States, however, requests that the Bankruptcy

Court in the first instance consider the United States' motion for a stay, *pendent lite*, of the

enforcement of the refund-redirection injunctions (and will ask the District Court for such a stay

if the Bankruptcy Court denies a stay), unless the Sixth Circuit Court of Appeals stays its

mandate in *United States v. Carroll*, 667 F.3d 742 (6th Cir., January 30, 2012), based on a

similar motion for a stay filed in that Court.[1]  Pursuant to LDR 83.50(d), this motion to withdraw

the reference is being filed in the bankruptcy court, but should be transmitted by the clerk of the

bankruptcy court to the District Court for determination, pursuant to LDR 83.50(e).

     A brief is appended hereto (as part of a single electronic document) in support of the

request to withdraw the reference.[2]

     WHEREFORE, the United States requests that the United States District Court for the

Eastern District of Michigan withdraw the reference to the Bankruptcy Court with respect to the

---

[1] Ordinarily a motion for a stay would not be made in the Court of Appeals in the first instance but, under the circumstances and given the tenor of the Sixth Circuit's opinion in *Carroll*, it was considered appropriate to request that it stay the mandate and thereby postpone the vacatur of the District Court's judgment that barred enforcement of the refund-redirection provisions.

[2] Local Bankruptcy Court Rule 9014-1, which provides a set of general rules regarding motion practice in the bankruptcy court, expressly does not apply to motions to withdraw the reference. See Local Bankruptcy Court Rule 9014-1(f)(6).

Motion for Relief in each of the above-referenced bankruptcy cases and consolidate said

contested matters in the District Court, and for such additional relief as appears appropriate.

> BARBARA L. McQUADE
> United States Attorney
> JULIA CAROFF
> Assistant United States Attorney
>
>    /s/ *Peter Sklarew*
> PETER SKLAREW
> Attorney, Tax Division
> Department of Justice
> P.O. Box 55
> Washington, D.C. 20044
> (202) 307-6571 / FAX (202) 514-5238
> peter.a.sklarew@usdoj.gov

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:                                    [*being filed separately in each case*]

CEDRIC & GINA BINNS,                Case No. 09-45674-tjt
NANCY KIBBE,                        Case No. 09-46597-tjt
KENNETH & GENEVIE FORBES,           Case No. 09-46930-mbm
STEVEN & LINDA JURGIEL,             Case No. 09-47131-wsd
KENNETH & CYNTHIA STAFFORD,         Case No. 09-47345-swr
JUNE LESTER,                        Case No. 09-47521-tjt
BRIAN KELLY,                        Case No. 09-48072-tjt
PHILLIP & RENEE ADORJAN,            Case No. 09-48196-mbm
KIMBERLY KLAUS,                     Case No. 09-48261-pjs
SHARILYN OBERDORF,                  Case No. 09-48601-pjs
DENNIS & SUSAN KAROL,               Case No. 09-48757-pjs

*Related District Court case:*  **No. 2:09-cv-13505**

**Brief in Support of Motion to Withdraw the Reference**

The United States has moved to withdraw the reference over the contested matters

commenced in each of these cases by its *Motion for Relief From Provision in Confirmation*

*Orders Enjoining IRS to Redirect Future Tax Refunds to Trustees (Unless the Sixth Circuit*

*Grants Rehearing in United States v. Carroll) and to Stay Enforcement of all Such Orders*

*During These Proceedings* ["Motion for Relief"], filed March 29, 2012.  The purpose is to have

a district judge resolve the issue of whether there has been a waiver of sovereign immunity for

the inclusion, in the Chapter 13 confirmation orders, of a provision enjoining the IRS to pay

directly to the Chapter 13 Trustees any tax refunds otherwise payable to the debtors as claimed

on future tax returns for the duration of the plans, or, if there has been a waiver of sovereign

immunity, then whether the injunctions should be dissolved because it is otherwise not

appropriate to require the IRS to redirect tax refunds as opposed to having debtors turn them

over to the Chapter 13 Trustees on receipt and employing other means to limit noncompliance by

debtors (such as a requirement that they supply copies of their tax returns to the Trustee

1

immediately after filing such returns each year and/or a requirement that the Trustees mail reminder letters to the debtors each January of their agreement to commit the tax refunds to plan funding).

## Background

The background to the instant dispute is summarized in *United States v. Carroll*, 667 F.3d 742 (6th Cir., January 30, 2012). In order to address the problem of debtor non-compliance with requirements in Chapter 13 plans that they turn over their annual tax refunds to the Trustees, "the bankruptcy judges of the Eastern District of Michigan began entering orders in Chapter 13 plans that required the IRS to send individual tax refunds directly to the Chapter 13 trustees, not to the individuals as the Internal Revenue Code contemplates. 26 U.S.C. § 6402(a)." *Id*. at 744. The provision was included in a standardized confirmation order, published on the Bankruptcy Court's website.[3] The Bankruptcy Court's encouragement of provisions in plans or confirmation orders purporting to require the IRS to remit tax refunds directly to Chapter 13 trustees was not dependent upon whether the IRS was a creditor that filed a claim in the Chapter 13 case.

As *Carroll* continues:

> The bankruptcy court entered the first of these orders in 2008. The IRS did not initially oppose them and thus redirected the affected tax refunds directly to the trustees who redistributed them according to the priorities of the plan.
>
> In September 2009, the IRS had a change of heart. Chapter 13 bankruptcy plans repay creditors over three to five years, which means that the refund-

---

[3] The standardized confirmation order provision reads:

> The Debtor shall remit _____% of all tax refunds to which Debtor is entitled during the pendency of the Plan and shall not alter withholdings without Court approval. The Internal Revenue Service is ordered to direct to the Chapter 13 Trustee the requisite refund to which the Debtor(s) become(s) entitled during the pendency of this Chapter 13 proceeding.

redirection orders required the IRS to track debtors' returns during several tax cycles. Over time, this approach took a toll, as the agency had to process each affected tax return by hand, a problem that may have been manageable when there were just 401 affected returns in April 2008 but that became unmanageable when there were 4,966 affected returns in April 2009.  [Record citation omitted.] At the request of the Chief Counsel to the Internal Revenue Service, the United States filed [a] lawsuit against the standing Chapter 13 bankruptcy trustees of the Eastern District of Michigan in their official capacities, complaining that the refund-redirection orders violated the United States' sovereign immunity.

The merits of the sovereign-immunity claim proceed in three steps. Step one:  the bankruptcy code abrogates any governmental unit's sovereign immunity "to the extent set forth" in 11 U.S.C. § 106. Step two: one provision set forth in §106 says that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). Step three: this language, according to the government, does not clearly waive its immunity from the bankruptcy courts' refund-redirection orders.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 38 (1992).

Consistent with this theory, the United States sought two forms of relief: a declaratory judgment preventing the trustees from enforcing the existing refund-redirection provisions and a writ of mandamus prohibiting the bankruptcy court from including these provisions in future Chapter 13 plans.

*Carroll*, 667 F.3d at 744-45.

Prior to seeking such relief, the United States asked the Bankruptcy Court to desist from the practice and offered to meet with the Bankruptcy Court and Trustees to discuss other possible solutions to the problem of debtors who fail to comply with orders directing them to turn over their tax refunds to the appointed Trustee upon receipt.  *See* letter of June 12, 2008, from John DiCicco, Deputy Assistant Attorney General, Tax Division, Department of Justice, to the Honorable Steven W. Rhodes, formerly Chief Judge, United States Bankruptcy Court for the Eastern District of Michigan ( Exhibit 1, attached).  Chief Judge Rhodes replied that, after discussing the letter and issues with the other judges of the Bankruptcy Court, "[t]he result of those discussions is that we will take no action at this time."  *See* Letter dated July 22, 2008, from Judge Rhodes (Exhibit 2, attached).

Also, while the *Carroll* opinion refers to a complaint and petition for mandamus filed in

3

September, 2009, the United States had filed an almost identical pleading a year earlier in September of 2008 but quickly dismissed it (without prejudice) at the request of the Executive Office of the United States Trustees, which sought time to act as a kind of mediator between the Tax Division of the Department of Justice and the IRS on the one hand, and the local standing Chapter 13 Trustees and judges of the Bankruptcy Court on the other hand. When that effort failed to produce a mutually acceptable solution to the problem of debtors who fail to turn their tax refunds over to a trustee in derogation of court orders that impose that responsibility on the debtor, the six judges of the Bankruptcy Court jointly signed and sent a letter to the Attorney General, dated April 23, 2009, requesting that the Tax Division not be permitted to refile this action (Exhibit 3, attached). By letter dated May 20, 2009, addressed to Chief Judge Phillip J. Shefferly from Associate Attorney General Thomas J. Perrelli (Exhibit 4, attached), the Department of Justice informed the Bankruptcy Court that it would be refiling its petition for mandamus in order to have a higher court resolve the issue of whether the tax refund redirection provision in the model plan and model confirmation order are within the jurisdiction of the Bankruptcy Court or otherwise inappropriate.

The District Court (Hon. Denise Page Hood), concluding that sovereign immunity barred the refund redirection injunctions, granted the writ as to future orders and granted the declaratory judgment sought as to past orders (and thus did not need to reach the request for a supplementary writ with respect to the enforcement of past orders). *In re: The Bankruptcy Court's Use of a Standardized Form of Chapter 13 Confirmation Order that Enjoins the Internal Revenue Service to Redirect Tax Refunds to Chapter 13 Trustees*, 423 B.R. 294 (E.D. Mich. 2010), *vacated* 667 F.3d 742 (6th Cir., January 30, 2012).

The Trustees appealed. The judges of the Bankruptcy Court filed a brief in support of the Trustees' position, consistent with Fed.R.App.P. 21(b)(4) (and seeking *amicus* status to the

extent that rule was held not to apply).  The National Association of Chapter 13 Trustees filed an *amicus* brief in support of the Trustees.  As indicated indirectly in *Carroll*, the appellants' primary thesis for a statutory waiver of sovereign immunity is 11 U.S.C. § 542, listed in § 106(a)(1).  *See Carroll*, 667 F.3d at 744-45.  It is axiomatic that statutory waivers of sovereign immunity must be strictly construed both in ascertaining the existence of a waiver and its determining its scope.[4]  The United States maintains that the word "trustee" in § 542 refers to the debtor in a Chapter 13 case in light of §§ 1302 and 1303.[5]  The United States also maintains that § 542 does not embrace tax refunds and particularly refunds of *future* tax overpayments that debtors may or may not make in the future, and may or may not claim on tax returns filed after confirmation of a Chapter 13 plan.[6]  Instead, the provision of the Bankruptcy Code authorizing orders directing payors of future income to make payments directly to a Chapter 13 trustee is § 1325(c) – a provision not listed in § 106(a)(1)'s statutory waiver of sovereign immunity.

---

[4] *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34 (1992); *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Thus, even "[w]here a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived."  *Lane v. Pena*, 518 U.S. 187, 196-97 (1996).  *See also In re Torres*, 432 F.3d 20, 26 n.5 (1st Cir. 2005) ("it is not clear that Congress intended to expose the federal government to all the remedies that may be imposed on private parties in bankruptcy proceedings").

[5] *See Cable v. Ivy Tech State College*, 200 F.3d 467, 472-73 (7th Cir. 1999) (Chapter 13 debtor is like a debtor in possession with the duty and power to collect the estate, exclusive of the Chapter 13 trustee); *In re Hutchinson*, 354 B.R. 523, 532-33 (Bankr. Kan. 2006) (Chapter 13 trustee could not compel turnover of estate property because the Bankruptcy Code vests Chapter 13 debtors with the exclusive right to use and control estate property).

[6] *See In re Kids World of America, Inc.*, 349 B.R. 152, 163 (Bkrtcy. W.D.Ky. 2006) ("[a] debt is 'matured,' 'payable on demand,' or 'payable on order' [under § 542(b)] if it is presently payable, but does not apply to debts that are only payable upon the occurrence of some later event").  *Accord*, *In re Gordons Transports*, 51 B.R. 633, 636 (Bankr.W.D.Tenn.1985).  In addition, a tax refund is never payable on demand or on order, and it does not have a "maturity" date.  Suits in bankruptcy to recover tax refunds are more specifically governed by § 505(a)(2), which requires waiting at least 120 days after a claim for refund is filed before suit may be filed.  This more specific provision negates the applicability of § 542 to tax refunds entirely.  *See In re Luongo*, 259 F.3d 323, 343,44 (5th Cir. 2001).

5

The Court of Appeals (Judges Norris, Sutton, and Griffin) issued its decision on January 30, 2012, in which it did not reach the sovereign immunity issue, "[e]ven though both sets of parties would prefer that we resolve this lawsuit on the merits" (*id.* at 745), but rather vacated the District Court's judgment for lack of Article III jurisdiction. According to the opinion, "[t]he government sued the wrong parties, depriving it of standing to bring this lawsuit." *Id.* The Court of Appeals held that "injury in fact" was met but that "causation" and "redressability" were lacking because the bankruptcy judges rather than the Trustees caused the government's injury, and because "[n]othing prevents" creditors or debtors from seeking to enforce the refund redirection provisions against the United States or the bankruptcy judges from doing so without a motion by anyone. The Court of Appeals held that the relief against the Bankruptcy Court itself was also beyond the jurisdiction of the District Court because the government failed to identify the judges of the Bankruptcy Court or the court itself as defendants or respondents.

The Court of Appeals seemed to suggest that the government might have sued the judges of the Bankruptcy Court but refrained out of a "desire not to sue federal judges – thank you – unless absolutely necessary." *Id*. at 746. It then posited that this was fortunately unnecessary because the government "could have filed a direct appeal from the entry of a redirection order in one (or more) of the cases in which the IRS is a party," which it observed the IRS had estimated at 20% of cases. *Id.*. It also suggested that a motion to expedite, accompanied by stay motion, would have taken care of the government's compliance burdens in "this or that impending tax season." *Id*.

The United States (on March 29, 2012) filed a petition for rehearing with the Court of Appeals.[7] It was considered appropriate, however, to also begin an alternative route to a

---

[7] The rehearing petition, docketed in Case No. 10-1400 (6th Cir.), argues generally that, consistent with Fed.R.App.P. 21, there was no requirement to name the judges or court as defendants or respondents. The rehearing petition further argues that the District Court's

6

determination of the sovereign immunity issue, in the event the rehearing petition is denied.

Instead of waiting for the proposal of a new plan with a refund redirection provision in a case in

which the IRS has a tax claim, however, the United States determined that it is more appropriate

for it to seek relief from the orders that, once the appellate mandate issues, will no longer be

declared unenforceable based on the District Court's judgment since that judgment would be

vacated.[8]

### Withdrawal of the Reference is Appropriate

Under 28 U.S.C. § 157(d), the district court "may withdraw, in whole or part, any case or

proceeding referred" under § 157, "for cause shown" (discretionary withdrawal) and "shall, on

timely motion of a party, so withdraw a proceeding if the court determines that resolution of the

proceeding requires consideration of both title 11 and other laws of the United States regulating

organizations or activities affecting interstate commerce" (mandatory withdrawal).  The United

States maintains that withdrawal is mandatory, but addresses discretionary withdrawal first

because it submits that the District Court should withdraw the reference under that standard and

---

judgment was effective in redressing the government's injury as it was based on a conclusion that the refund redirection injunctions are "void" for want of a statutory waiver of sovereign immunity.  That conclusion, once made by the District Court, would render the refund redirection injunctions unenforceable or at the very least afford the IRS a defense to any contempt motion by a party in interest not bound the declaratory judgment.  The rehearing petition also points out that, contrary to *Carroll* opinion, creditors lack standing to enforce § 542, absent a special order authorizing them to represent the estate.  *See Matter of Perkins*, 902 F.2d 1254, 1257-58 (7th Cir. 1990) (creditor may not enforce § 542); *In re R & L Wood Products, Inc.*, 1998 WL 449665, *4 (6th Cir. 1998) (same; unpublished, citing *Perkins*).  The United States also maintains that a debtor would have no standing to complain about receiving his or her own tax refund, since the debtor can plainly turn it over to the Trustee if he or she wishes to do so.

[8] Additionally, the cases in which the IRS has claims pose a somewhat less substantial compliance burden for the IRS, since it must in any event open those cases, input freeze codes, and monitor them for dismissal or conversion.  (Each manual or non-computerized refund then entails the same burden whether the IRS has a claim or not.)  Accordingly, it is important for the government to secure a ruling on the sovereign immunity issue in a case in which the IRS has not filed a tax claim.  At the same time, we do not perceive a legal basis for different outcomes.

7

that this will obviate the need to reach what is a more difficult issue of first impression.

### *Discretionary Withdrawal*

The District Court for the Eastern District of Michigan has fashioned a test for ascertaining if there is "cause" for permissive withdrawal that is similar to those of most courts addressing the issue.  It considers:

> (1) Whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

*In re Lost Peninsula Marina Devel. Co.*, 2010 WL 3070134 (E.D.Mich. 2010) (quoting *Venture Holdings Co., LLC v. Winget,* 2006 WL 800790, *1 (E.D.Mich. 2006) (quoting *In re Burger Boys*, 94 F.3d 755, 762 (2d Cir.1996)).  *See also In re Mathson Industries, Inc.*, 408 B.R. 888, 892 (E.D.Mich. 2009).  Some courts suggest that the core versus non-core issue  – governed by the definition of core matters in 28 U.S.C. § 157(b) – is the most important factor, but the United States maintains that the suggestion is woven from whole cloth.  There are sometimes unique or other special reasons to withdraw the reference even over a core matter.  As noted below, we maintain that the instant matter is non-core although we anticipate the Trustees will disagree.

The United States maintains that "cause" for withdrawal is present here for several unique reasons.  As the Sixth Circuit recognized, the dispute here is essentially between the Executive Branch and the judges of the Bankruptcy Court who conceived of and have promoted the model plan and who tried to persuade the Justice Department to abandon its efforts before they began.  Assuming withdrawal is denied, the United States will likely move to recuse the entire local bankruptcy bench.  Not only have the judges had a major role in conceiving of and fostering the use of the refund redirection provisions; they have also apparently (albeit silently) refused even to experiment with any of the alternative ways that the United States suggested that debtor compliance with turning over refunds might be improved, preferring instead to shift the

burdens to the IRS before even trying other approaches.[9]

Assuming the recusal is granted, the procedure could result in unnecessary delay in what the Sixth Circuit in *Carroll* plainly envisioned as an expedited proceeding.  The Circuit would have to be approached to assign a judge from another district (presumably from the bankruptcy court in Toledo, Ohio, since that is the closest in proximity to Detroit).  In this regard, an important factor in determining discretionary withdrawal is judicial economy.  *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 166 (E.D.N.Y. 1986).  *Cf. In re Wedtech Corp.*, 81 B.R. 237 (S.D.N.Y. 1987) (holding that overlapping facts, transactions, and issues constituted good cause for withdrawal of the reference in order to consolidate a portion of the bankruptcy proceeding with other district court proceedings).  In fact, judicial economy may outweigh other considerations.  Thus, in *Wedtech*, the district court rejected the debtor's arguments that withdrawal was sought as a "ploy to slow down proceedings against these defendants by tying discovery to the broader and slower-moving district court case," noting that "issues of fairness and of judicial economy militate in their favor nonetheless."  Id. at 239.

---

[9] The United States has suggested that confirmation orders warn debtors that their discharge is put at risk if they fail to turn over refunds.  This has never to our knowledge been attempted and in fact there appears to be not a single published opinion in which the Bankruptcy Court for this district dismissed a case for failure to turn over a tax refund, which might serve as an example.  The United States has suggested that confirmation orders direct debtors each year to supply the Trustee with a copy of any tax return immediately after filing it (a practice we were informed has been used successfully elsewhere) so that the Trustee is aware when a refund may be forthcoming.  The Trustee could then remind the debtor of the obligation to turn it over and if a copy of a return was not produced by shortly after April 15, could inquire as to whether one has been filed.  Alternatively, the Trustees could mass-mail reminders to all debtors in the district each January.  Or the court could require the debtors' attorneys to send such reminders to their clients.  The United States has also suggested that tax refunds over the most recent years preceding the petition be averaged and divided by 12 and monthly plan contributions be increased accordingly (a practice also employed successfully elsewhere).  It is inappropriate for judges who conceived of the program, and have ample authority to try other reasonable methods of increasing compliance (but have refused to try any), to adjudicate whether the responsibility, burdens and costs should simply be shifted entirely to the IRS, even assuming a statutory waiver of sovereign immunity.

Withdrawal of the reference would serve to expedite the proceedings given that, without it, the United States will appeal to the District Court anyway from the almost inevitable decision of the bankruptcy court upholding its program.  Ultimately, the issue is most likely to return to the Sixth Circuit for resolution.  Thus withdrawal serves the interests indicated under factors (2) (efficient use of judicial resources) and (3) (avoiding delay and unnecessary costs).  The fourth factor – uniformity of bankruptcy administration – will likely have no impact since one way or the other the sovereign immunity issue is destined to be decided at a higher level.  The fifth factor, forum shopping, ought to be considered immaterial here.  The United States has already articulated reasons why it is not appropriate for the matter to be adjudicated by one of the judges of the Bankruptcy Court for this district.  Other factors support withdrawal as noted above, which leaves for further discussion only the core versus non-core factor.

To address the core versus non-core factor, it is necessary first to discuss bankruptcy jurisdiction generally.  Local Rule 83.50, which is standard in all district courts, implements 28 U.S.C. § 157 and thus "refers" to the bankruptcy "units" of each district court (*see* 28 U.S.C. § 151) the jurisdiction conferred on the district courts by 28 U.S.C. § 1334, subject to review under 28 U.S.C. § 158.  These provisions were enacted in 1984 to cure constitutional defects in the 1978 Bankruptcy Code's prior jurisdictional framework in which Article I bankruptcy judges had been improperly vested directly with Article III jurisdiction, as revealed in the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

Section 1334(a) of title 28 confers on the district courts "exclusive jurisdiction" over bankruptcy "cases."  This grant of jurisdiction encompasses the Article I administrative functions of the court in a bankruptcy case, including the approval of uncontested matters, such as the confirmation of uncontested plans or uncontested sales of property, and also permits

adjudication of those disputes that are inseparable from the case (*e.g.*, objections to a trustee's application to retain counsel and the confirmation of contested plans).  Section 1334(b) then vests the district courts in bankruptcy cases with "not exclusive" jurisdiction over three kinds of "civil proceedings" or litigation that may arise.  First are "civil proceedings arising under title 11" itself.  An example is a dispute between a debtor and creditor over whether a particular debt is excepted from discharge pursuant to 11 U.S.C. § 523.  Second are civil proceedings "arising in . . . a case under title 11."  The prime example of those are the determination of disputes over the amount or validity of debts.  Such disputes turn on non-bankruptcy law, and may be resolved in other forums if the stay is lifted, with binding effect in the bankruptcy case, but are more often litigated in the bankruptcy case because of the need to determine claims against the estate.  *See* 11 U.S.C. § 502.  The third category are "civil proceedings . . . related to a case under title 11."  The related-to jurisdiction forms the outer perimeter of bankruptcy jurisdiction and generally refers to proceedings that could impact the estate.  *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)).

Because the "related to" jurisdiction is so broad, courts have consistently wrestled with ways to cabin it so that it does not swallow all litigation involving a debtor.  Thus, "when a proceeding has a vague or incidental relation to the bankruptcy case, or its impact upon the case would be speculative, indirect or incidental," the proceeding is not related to the bankruptcy case.  *In re Pal Nissan, Inc.*, 126 B.R. 966, 972 (Bankr. W.D. Mich. 1991).  *See Matter of FedPak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("we believe that common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else,'" quoting Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction*, 112 Banking L.J. 957 (1995)).

In conferring bankruptcy jurisdiction on the *district* courts in the 1984 amendments,

Congress simultaneously recreated the bankruptcy courts as "units" of the district courts, and authorized the district courts to refer civil proceedings under their bankruptcy jurisdiction to bankruptcy judges, subject to review – in some instances appellate and in some instances *de novo* – to the district judges.  28 U.S.C. § 151, 152, 157, 158.  In general, proceedings arising under title 11 or in a case under title 11 are "core" proceedings while proceedings merely related to a case under title 11 are non-core proceedings.  28 U.S.C. § 157.  The statutory scheme confers final adjudicatory authority on Article I bankruptcy judges for core proceedings, subject to appeal, but for non-core proceedings permits only proposed findings of fact and conclusions of law, subject to *de novo* review by an Article III district judge.  *See* 28 U.S.C. § 157.

The Supreme Court most recently had occasion to revisit the validity of the jurisdictional provisions enacted in 1984 and struck as unconstitutional language in 28 U.S.C. § 157(b)(2)(C) that defined as a core proceeding any counterclaim by the debtor's estate against a creditor that files a claim against the estate.  *Stern v. Marshall*, 131 S.Ct. 2594 (2011).  The Supreme Court in *Stern* held that, unless the claim cannot be adjudicated without necessarily resolving the estate's counterclaim, a party sued by the bankruptcy estate (trustee or debtor in possession) has a right to have an Article III judge in any suit in which the estate seeks to recover money from such party.  It is worth noting in this connection that Article III extends to all "Controversies to which the United States shall be a Party."  Since the United States maintains that Congress did not intend to place the United States on different footing than private parties in respect to which proceedings require an Article III judge, it is our position that claims for tax refunds against the IRS are subject to *de novo* review, except where the IRS has filed a claim against the estate and an objection to such claim will necessarily determine the estate's counterclaim for a tax refund (for example where the same tax and tax period are at issue and the tax has been only partially

paid).[10]

As noted above, one factor among others in determining whether it is appropriate to withdraw the reference, at least the typical case, is whether the proceeding is core or non-core. This partly reflects that where a proceeding would be subject to *de novo* review in any event, the interest in having a bankruptcy judge recommend findings of fact or conclusions of law is not as great as where there would be final adjudication subject to deferential appellate review.[11] While the instant matter does not concern directly the adjudication of whether the debtors overpaid their taxes, it does concern whether the Bankruptcy Court may alter the identity of the party to whom tax refunds are required to be sent under the Internal Revenue Code. *See* 26 U.S.C. § 6402(a) – *i.e.*, the taxpayer.

The Motion for Relief involves a determination of the validity or voidness of orders inserted into the plan confirmation orders that require the IRS to alter its normal processing of tax refunds in order to redress an apparent problem with getting debtors to comply with their own promises in their plans to remit tax refunds to the Trustees. The United States maintains that the determination of whether to use such a procedure is not a core matter under 28 U.S.C. § 157(b) but, if it is, then the application of the core versus non-core test in that context violates Article III, for reasons not wholly dissimilar to those in *Stern*. The IRS is not even a party to

---

[10] "After finding an application or portion of a statute unconstitutional, the Court must ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Ayote v. Planned Parenthood of Northern New England*, 546 U.S. 320, 321 (2006). *See also United States v. Booker*, 543 U.S. 220, 246 (2005) ("We seek to determine 'what Congress would have intended' in light of the Court's constitutional holding"). It falls to the courts in the wake of Stern to ascertain whether 28 U.S.C. § 157(b)(2)(C), having been found to be constitutionally defective, should be preserved only as to counterclaims against the United States but no other parties. We submit it should not.

[11] Two reasons underlie why courts consider core versus non-core relevant in deciding whether to withdraw the reference. One is that *de novo* review by the district judge is already probable (unless neither party seeks such review). The other is that, by definition, non-core or related-to proceedings raise questions that exceed the bounds of pure bankruptcy law.

13

80% of the Chapter 13 cases (it generally holds a claim against the debtor in approximately 20% of cases).  It is a stranger to the proceedings and is being ordered to commit resources on the premise that its interests in conserving its resources should be subordinated to the interests of creditors and debtors in having the debtors not inadvertently "forget" to turn over their tax refunds to the Trustees on their own.

The Trustees will no doubt argue that an order directing a non-party to turn over money is a core proceeding because it pertains to the administration of the estate, since § 1306 makes after-acquired funds property of the estate in a Chapter 13 where, as here, the plan explicitly relies upon those funds being administered as such.  The United States maintains, however, that an overpayment is not property of the taxpayer-debtor until it is actually refunded.  Before that, all the taxpayer-debtor holds is a *claim* against the government that arises at the close of the tax year (and for that there is only the possibility of an overpayment).  The Trustees may also argue that the plan confirmation process itself is a "core" matter.  That is in fact true, but it does not mean that things that do not belong in plans, when placed in plans, automatically are transformed into core proceedings when they would not otherwise be.  We do not seek to alter the confirmation of any plans.  We simply maintain that one rather minor provision in each plan is not enforceable and that its intent may be achieved another way.  The effect of voiding that provision will not materially alter the plan because, as presented above, the debtor can still be ordered to turn over the tax refund to the Trustee.  In many cases, a plan will allow a debtor to remit a portion of his earnings.  If the debtor fails to comply, sometimes the Trustee will then seek a separate order directing the debtor's employer to remit the amounts.  That is not considered to require a modification of the confirmed plan and the reverse – switching from what amounts to garnishment instead to debtor remittances as ordered by the court – would not materially alter a plan either.  It merely alters the means for enforcement.

In any event, there is another and more fundamental problem with calling the refund redirection injunctions a "core" matter, which is that it assumes that there is any bankruptcy jurisdiction whatsoever.  That goes to the essential issue raised by the Motion for Relief.  If the United States is correct in its assertion of sovereign immunity, then there was no jurisdiction at all to include the refund-redirection provisions in confirmation orders and that violation of sovereign immunity cannot convert the matter into a "core" matter because the procedural onus is now on the United States to seek relief from *a fait accompli*.  In this regard, it is important to bear in mind that the confirmation order provisions are directed at *future* tax returns that might or might not include claims of tax overpayments (which overpayments if they ever occur have not yet been made).  Unlike a wage garnishment order compelling regular deductions from a debtor's weekly paychecks, there is simply no basis upon which to attach a future tax overpayment not yet claimed, which might not even come into existence, and the amount of which is not predictable if it does arise.[12]  The "related to" jurisdiction is not to be invoked for speculative and/or very minor impacts on a bankruptcy estate.  *In re Pal Nissan, Inc.*, 126 B.R. 966, 972 (Bankr. W.D. Mich. 1991) ("when a proceeding has a vague or incidental relation to the bankruptcy case, or its impact upon the case would be speculative, indirect or incidental," the proceeding is not related to the bankruptcy case)..

Finally, "the presence of significant issues of first impression" is a factor supporting withdrawal.  *In re Chateaugay Corp.*, 86 B.R. 33, 39 (S.D.N.Y.,1987).  As the district court in that case observed, "to deny discretionary withdrawal of a proceeding involving issues of

---

[12] Sovereign immunity has been explicitly waived for garnishment of certain government obligations to debtors, but not tax refunds.  42 U.S.C. § 659.  *Enfinger v. Enfinger*, 452 F.Supp. 553 (D.C.Ga.1978); *Colvin v. United States*, 267 S.E.2d 297, 298 (Ga.App. 1980).  Congress has also provided for tax refunds to be subject to interception for the collection of limited categories of debts enforced through state agencies, and only if they comply with certain administrative procedures.  26 U.S.C. § 6402(d); 31 U.S.C. § 3720A.  Bankruptcy trustees are not included.

national importance in pension benefit insurance and bankruptcy law that could affect hundreds
of thousands of present and future retirees and their employers would effectively erase the
margin of discretion allotted to district courts under the statute." *Id.* While the issue here is not
quite that weighty, it is one of first impression involving tax refunds that will hereafter become
payable to debtors in thousands of already pending local cases and virtually all future local
bankruptcy cases.

### Mandatory Withdrawal

As noted, above, withdrawal is mandatory if "resolution of the proceeding requires
consideration of both title 11 and other laws of the United States regulating organizations or
activities affecting interstate commerce." 28 U.S.C. § 157(d). While we do not argue that every
routine determination of the correctness or amount of a tax assessment implicates mandatory
withdrawal (*see* 11 U.S.C. § 505(a), giving the bankruptcy courts authority to make such
determinations), the instant proceeding does not involve adjudicating tax liabilities at all, but
rather involves the administration of the entire tax refund program when taxpayers file Chapter
13 bankruptcies. The provision requiring that refunds be made to the person who made the tax
overpayment is, we submit, a law regulating activities affecting interstate commerce. It cannot
be disputed that paying out tax refunds affects commerce. Indeed, the economic stimulus acts
enacted by Congress over the past half century have included the creation of one-time refundable
tax credits for all individuals or all those below a certain income threshold. *See In re Smith*, 393
B.R. 205 (Bankr. S.D.Ind. 2008) (accepting the position of the United States, as *amicus curiae*,
that the tax rebates included in the Economic Stimulus Act of 2008 were in the nature of a
refundable credit against 2007-year tax and therefore could be claimed by any Chapter 7 trustee

of the estate of any taxpayer who filed bankruptcy during 2008 but after the enactment date).[13]

In *In re G-I Holdings, Inc.*, 295 B.R. 222 (N.J. 2003), the district court held that withdrawal of the reference was mandatory where the dispute involved which provision of the Internal Revenue Code applied to the tax obligations of the Chapter 11 debtor and its subsidiary, since the determination of whether a particular tax code section applied to the facts in case was one of first impression and such determinations were reserved for Article III courts, and substantial and material consideration of complex and competing non-bankruptcy legal standards was required to be undertaken.

In *In re Oil Co., Inc.*, 140 B.R. 30 (E.D.N.Y. 1992), the United States argued that reference withdrawal was mandatory for a dispute involving taxes because the kind of tax involved – an excise tax on fuel – was not imposed if the fuel seller and buyer were "registered" with the IRS under 26 U.S.C. § 4101 (which would leave the tax to be imposed on a subsequent sale). The dispute involved a defense to the tax based on the contention that the transactions involved were by registered entities, whereas the government argued that the nominal seller was a shell company designed to hide the real seller and the real seller was not registered. The district court agreed that mandatory withdrawal applied and ruled, in the alternative, that it would exercise its discretion to withdraw the reference.

In the latter regard, we submit that one of the factors to be considered in determining to exercise discretionary withdrawal is whether the resolution bears at least some of the attributes of the mandatory withdrawal requirement, including whether substantial non-bankruptcy law issues are implicated and whether the non-bankruptcy law involved generally impacts interstate

---

[13] In *Smith* we argued that the Chapter 7 trustees *did* have a right to the tax refunds at least from the debtors, and that the IRS would comply voluntarily with particular requests to turn them over to such trustees. But, as will be demonstrated when the merits of the sovereign immunity contention are addressed, the situation for Chapter 13 trustees is quite distinguishable.

17

commerce, even if the particular activity is not federally regulated. Here, the instant case clearly implicates provisions of the Internal Revenue Code and it cannot be disputed that tax refunds (as well as who gets them) affect interstate commerce. Discretionary withdrawal in such a case will also moot a difficult issue over the application of mandatory withdrawal.

### Conclusion

For the foregoing reasons, the reference should be withdrawn. Since the proceedings all raise the same issue, they should be consolidated.

<div style="margin-left:40%">

BARBARA L. McQUADE
United States Attorney
JULIA PIDGEON
Assistant United States Attorney

   /s/ *Peter Sklarew*
PETER SKLAREW
Attorney, Tax Division
Department of Justice
P.O. Box 55
Washington, D.C. 20044
(202) 307-6571 / FAX (202) 514-5238
peter.a.sklarew@usdoj.gov

</div>

| United States District Court<br>Eastern District of Michigan | Bankruptcy Matter<br>Civil Case Cover Sheet | District Court Label |
|---|---|---|

In re:

*[filed separately in each case]*

| | |
|---|---|
| CEDRIC & GINA BINNS, | Case No. 09-45674-tjt |
| NANCY KIBBE, | Case No. 09-46597-tjt |
| KENNETH & GENEVIE FORBES, | Case No. 09-46930-mbm |
| STEVEN & LINDA JURGIEL, | Case No. 09-47131-wsd |
| KENNETH & CYNTHIA STAFFORD, | Case No. 09-47345-swr |
| JUNE LESTER, | Case No. 09-47521-tjt |
| BRIAN KELLY, | Case No. 09-48072-tjt |
| PHILLIP & RENEE ADORJAN, | Case No. 09-48196-mbm |
| KIMBERLY KLAUS, | Case No. 09-48261-pjs |
| SHARILYN OBERDORF, | Case No. 09-48601-pjs |
| DENNIS & SUSAN KAROL, | Case No. 09-48757-pjs |

*Related District Court*
*Case No*: **2:09-cv-13505**

**Cause of Action/Nature of Suit:** (This matter is referred to the district court for the following reasons)

| | | |
|---|---|---|
| _____ | [422] 28 U.S.C. 158 | Bankruptcy Appeal |
| _____ | [422] 28 U.S.C. 158 | Motion for Leave to Appeal |
| __X__ | [423] 28 U.S.C. 157(d) | Motion for Withdrawal of Reference *(and Consolidate)* |
| _____ | [423] 28 U.S.C. 157(c)(1) | Proposed Findings of Fact and Conclusions of Law |
| _____ | [423] 28 U.S.C. 158(c)(a) | Order of Contempt |

**Date:** __April 3, 2012__          **Name:** __/s/ *Peter Sklarew*_____

Name and Address of Interested Parties:

The United States of America has filed a motion in each of the above-captioned cases seeking relief from an injunction in the confirmation order directed at the Internal Revenue Service, followed by a motion to withdraw the reference for such motion. The United States assumes that the Trustee in each case will respond.  The United States does not believe any other party has standing to oppose the motion, but it is possible other parties may respond.

**Movant:**

United States of America
c/o Peter Sklarew
Dept. of Justice, Tax Division
P.O. Box 55
Washington, D.C.

**Respondent Trustees (by case):**

Tammy L. Terry
535 Griswold, Suite 2100
Detroit, MI 48226
**(Case Nos. 09-45674; 09-46597; 09-47131, 09-47521; 09-48072; 09-48757)**

David Wm Ruskin
26555 Evergreen Rd Ste 1100
Southfield, MI 48076-4251
**(Case No. 09-46930; 09-48196)**

Krispen S. Carroll
719 Griswold
1100 Dime Building
Detroit, MI 48226
**(Case No. 09-47345; 09-48261; 09-48601)**